## Case No. 4,535.

ESTABROOK et al. v. DUNBAR et al.

[2 Ban. & A. 427;[1] 10 O. G. 909.]

Circuit Court, D. Massachusetts. Sept. 23, 1876.

¹ [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

J. E. Maynadier, for complainants.

B. F. Thurston and W. W. Swan, for defendants.

SHEPLEY, Circuit Judge. The invention of Estabrook is thus described in his patent, No. 85,374: "Its object is to facilitate the attachment of soles to the uppers of boots and shoes, and consists in the construction of a screw-peg having a flattened wedge-shaped point, which, when the peg is driven into the sole of a boot or shoe, will strike against the metal plate upon the last, and bend over the inner sole to form a clinch."

He then describes his screw-peg as made of round or other wire, which is provided with a screw-thread and a flattened, wedge-shaped point. When this wedge-pointed peg is forced by a hammer or other equivalent instrument through the holes made by awls or otherwise in the soles of boots or shoes properly lasted, it will, when it strikes the metal-covered last, have its weak point bent down, and will therefore be properly clinched over the insole. He does not claim that wire provided with a screw thread was new as a fastening to confine the soles of boots and shoes to the uppers, and admits that screws had been used for that purpose, but claims that these screws were screwed into their seats, that they were of conical shape, and could never be satisfactorily fastened. He states that when one of these screws was turned a little too far, so that its flat point struck the last, it would invariably tend to force the sole off the last again, and that thus a water-tight boot or shoe could not be produced. He continues—"Furthermore these screws had to be made tapering, and thus became weak on their inner ends, while my pegs can be made entirely cylindrical or prismatic." He claims to have invented— "The driving of screw-pegs having flattened or wedge-shaped, ends into the leather by means of a hammer, and to have found that the peg when thus applied will hold as fast as when screwed in. The leather being wet when the peg is applied will close tight around the peg, and will hold the same very securely. The clinching wedge-shaped pegs are self-adjustable—that is, they will be clinched more or less as they are more or less too long."

Although in the specification he claims to have invented the art of driving into the leather such screw-pegs with wedge-shaped ends, and again refers to his "improved process," his technical claim is not for an art, but for the thing manufactured—his newly invented screw-peg. Most of the questions presented at the hearing of the cause depend for their solution upon the construction to be given to his claim. The claim is in these words: "The self-clinching metallic screw-peg A, having a flattened wedge-shaped end, whereby, as it strikes the metal plate upon the last, in the act of driving, it is adapted to be bent down into the inner sole of the

boot or shoe, as herein shown and described."

The technical claims in a patent are to be construed with reference to the state of the art so as to limit the patentee to, and to give him the full benefit of, the invention he has made. They are also to be construed in connection with the specification, so as to limit the patentee to, and give him the full benefit of, the invention he has described.

The general terms, and sometimes special words, in the claims, must receive such a construction as may enlarge or contract the scope of the claim, so as to uphold that invention and only that invention which the patentee has actually made and described, when such construction is not absolutely inconsistent with the language of the claim.

Before Estabrook made his invention, shoe-nails and metallic shoe-pegs having a clinching-point had been in common use. They were like the defendants' nails, except that they were without corrugations. Prior to the date of complainants' invention nails and tacks with clinching-points had been used in various kinds of wood and leather work. Shoe fastenings of metal, having serrations upon the bodies of the nails, had been used. Screws of a conical shape had been used for fastening the soles of boots to the uppers, which screws were screwed into their seats. Cylindrical metallic shoe-pegs had been made with an exterior screw-thread. There was also in use a corrugated nail, which was well known under the name of the imported sprig. This nail had a uniform diameter from the head to the point. The head was of the usual and common form; the point was conical or four-sided; the body was corrugated or serrated, but not in the form of a true screw. The imported sprig differed from the complainants' patent screw-peg in three particulars, which (without at this time distinguishing what were material and what immaterial differences) were: first, the imported sprig had a head, the patented screw-peg is represented and described as headless; second, the imported sprig had a conical or four-sided point, apparently designed only for facilitating the insertion and driving of the nail, the patented screw-peg had a flattened wedge-shaped end, with a chisel-point, intended to bend and clinch; third, the body of the imported sprig was serrated or corrugated, while the body of the patented screw-peg is represented with a true screw-thread.

There was also in use the cable-screw fastening, which differs in form from Estabrook's only in the fact that Estabrook's has a clinching-point, while the cable screw-peg is so blunt at the entering end (which is a wedge whose sides are at an obtuse angle) that it cannot possibly clinch without crippling the peg, and will not take up the settle of the stock. It is obvious, from this reference to the state of the art, that the claim of Estabrook must be limited to that form wherein his screw-peg differed from those shoe-fastening screws, nails, and pegs previously in use, to which reference has been made.

The description of the Estabrook invention given by Wires, the complainants' expert, is substantially accurate when he says that—"The invention consists in a peg made of tough malleable metal, with threads or projections upon the body, with a flattened wedge-shaped clinching-point, and the body enough stronger than the point so that, when it is driven into or through the sole of a boot or shoe, and comes in contact with the iron face of the last, the point will bend over and clinch back on to the inner sole, and thereby force the stock back upon the threads or projections on the body of the nail, and thereby take up the settle and adapt itself to the varying thickness of the leather without crippling the body of the nail."

To this definition of the invention should be added that this result was effected by Estabrook by an improvement in the form of the previously existing screw-peg and cable-screw, which improvement in form consisted, first, in substituting for a tapering form of the body of the screw a body having substantially the same size in cross-section, and substantially the same strength from the head end to the commencement of the "point" (using point in its technical sense) at the other end of the screw-peg; and, secondly, in providing a flattened wedge-shaped "point" so very much weaker than the body of the screw that the whole clinch, when the peg is driven against the armour of the last, shall be made by the bending of the wedge-shaped point, without crippling the body of the peg.

It is now obvious that the claim of Estabrook is to be construed as a claim for a self-clinching metallic screw-peg A (i. e., one having a body retaining substantially the same size and strength from the head to the clinching-point), such body being serrated or corrugated, and having a flattened wedge-shaped end whereby, as it strikes the metal plate upon the last in the act of driving, it is adapted to be bent down into the inner sole of a boot or shoe, as in the patent is shown and described; i. e., so that "the flattened, wedge-shaped end or point" alone will "bend over the inner sole to form a clinch," and so that the comparatively very rigid body of the screw-peg will not cripple or "tend to force the sole off the last again." This secures to Estabrook his invention, and limits him to the invention which he actually made—an improvement upon the shoe-peg made of wire, with a corrugated, serrated, or screw-threaded body, of substantially uniform size from head to point, by adding to it a flattened wedge-shaped end, forming a clinching-point, which bends down into the inner sole without crippling the body of the screw-peg.

The defendants make and sell a shoe-nail scarcely distinguishable, except in the form

of the head, from the Field nail, so called, and other tapering and corrugated nails which were in common use. So far as the defendants' nail differs in form from nails which were old, it is merely an attempt to improve upon the form of the old corrugated, tapering-cut shoe-nail. It is not like the complainants', an improvement in the screw made by cutting off lengths of cable wire, or corrugated wire, and forming a point on one end of each piece by cutting away the metal upon opposite sides so as to form a thin wedge-shaped end with concaved sides. The two improvements relate respectively to different points of departure from entirely distinct manufactures. One vital distinguishing difference between the complainants' screw-peg and the Whidden nail is, that the complainants' screw-peg has a body continuing of the same size without tapering from the driving end to the commencement of the entering and clinching point, and this is a vital and important element in this invention, while the defendants' nail is cut tapering from the driving to the entering end of the nail without any such wedge-shaped flattened end or point, separate from the body of the nail or peg, as distinguishes the complainants' invention. Other differences are clearly pointed out in the testimony of Mr. Waters and Mr. Hibbard, the experts on the part of the defendants, who have given a very clear and accurate history of the state of the art. The differences, however, which I have pointed out are sufficient to prove that the defendants' nail is not an infringement upon the complainants' screw-peg. I find myself unable to give any construction of the complainants' patent for a manufactured article which would cover the defendants' manufacture without at the same time embracing what was older than complainants' invention, and thus invalidating their patent. The conclusion to which I have arrived is that the complainants have a good and valid patent, but that the defendants have not infringed.

Decree in favor of defendants to be drawn up and submitted to the court.